IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| SHANNON G., § | |
| PLAINTIFF, § | |
| § | |
| V. § | CASE NO. 3:19-CV-3001-B-BK |
| § | |
| COMMISSIONER OF THE SOCIAL § | |
| SECURITY ADMINISTRATION, § | |
| DEFENDANT. § | |

### FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE UNITED STATES MAGISTRATE JUDGE

Plaintiff seeks judicial review of the Commissioner's final decision denying her claim for a period of disability and disability insurance benefits under Title II of the Social Security Act (the "Act"). Pursuant to 28 U.S.C. § 636 and *Special Order 3*, this cause is before the Court for a recommendation on the parties' cross-motions for summary judgment. Doc 10; Doc. 12. As detailed here, Plaintiff's *Motion for Summary Judgment* should be **GRANTED**, Defendant's *Motion for Summary Judgment* should be **DENIED**, the Commissioner's decision should be **REVERSED**, and this case should be **REMANDED**.

## I. BACKGROUND

### A. Facts

Plaintiff was 57 years old on her alleged disability onset date and 59 years old at the time of the administrative law judge's ("ALJ") decision. Doc. 7-1 at 34; Doc. 7-1 at 151. She alleges that she became disabled in April 2016, and her insured status expired in December 2020. Doc. 7-1 at 18; Doc. 7-1 at 151-54. Plaintiff has a master's degree and past relevant work as a vocational rehabilitation counselor. Doc. 7-1 at 34, 38; Doc. 7-1 at 59.

In terms of Plaintiff's relevant medical treatment, she was first diagnosed with multiple sclerosis ("MS") in 2002.[1] Doc. 7-1 at 259. An April 2016 brain MRI showed extensive white matter lesions and no evidence of active demyelination, which was unchanged from a 2010 MRI.[2] Doc. 7-1 at 259. The MRI did show demyelination at C2-3 and spondylosis at C5-6 and C6-7 with bilateral foraminal narrowing at C5-6. Doc. 7-1 at 260.

Plaintiff was evaluated by Dr. Darin T. Okuda, M.D., in September 2016. Doc. 7-1 at 281-84. Plaintiff reported numbness and a sense of tightness in her right arm, with decreased sensation in her fingertips. Doc. 7-1 at 282. Plaintiff followed up with Dr. Okuda in April 2017 and reported reduced coordination with her right arm and migratory tightness. Doc. 7-1 at 424. Repetitive use of her arm worsened her symptoms and gripping objects with her hand tired her arm. Doc. 7-1 at 424. Plaintiff also reported overwhelming fatigue, irritability, and insomnia. Doc. 7-1 at 424.

In November 2017, Plaintiff presented to neurologist Dr. James Barry, M.D., for treatment of her MS. Doc. 7-1 at 767. Plaintiff reported that her symptoms were "mild" and included fatigue, memory impairment, cognitive decline, difficulty with word finding, an internal "vibration," urinary incontinence/urgency, and occasional blurred vision. Doc 7-1 at 767. On

---

[1] In MS, the immune system attacks the protective sheath (myelin) that covers nerve fibers and causes communication problems between the brain and the rest of the body. Symptoms include limb numbness or weakness, forgetfulness, tremors, lack of coordination, unsteady gait, muscle stiffness/spasms, blurry vision, fatigue, dizziness, mood swings, and problems with bladder function. https://www.mayoclinic.org/diseases-conditions/multiple-sclerosis/symptoms-causes/syc-20350269 (last visited Feb. 4, 2021).

[2] Demyelination is a degenerative process that erodes the myelin sheath which normally protects nerve fibers. Demyelination exposes the fibers, causing problems in nerve impulse conduction which can affect many physical systems. https://www.medicinenet.com/demyelination/definition.htm (last visited Feb. 4, 2021).

examination, Dr. Barry noted that Plaintiff had loss of sensation in her lower extremities and right arm, as well as ataxia.[3] Doc. 7-1 at 769.  Additionally, he started Plaintiff on medication for pseudobulbar affect.[4] Doc. 7-1 at 769-770.  Plaintiff underwent an eye test which indicated that demyelinating lesions were affecting both optic nerves.  Doc. 7-1 at 772.

In January 2018, Plaintiff informed Dr. Barry that she had back pain and tightness and leg tightness and muscle spasms, and her symptoms were worsening.  Doc. 7-1 at 759, 762.  Plaintiff said she could walk a quarter of a mile, but she had to walk more slowly.  Doc. 7-1 at 759.  On examination, Dr. Barry noted Plaintiff had nystagmus of both eyes and right foot drop.[5]  Doc. 7-1 at 762.  Two months later, Dr. Barry noted that Plaintiff could only walk 500 meters before becoming tired.  Doc. 7-1 at 754.  Plaintiff also reported increased fatigue, memory difficulty, and an intermittent right facial twitch.  Doc. 7-1 at 754.

Plaintiff saw Dr. Huy M. Tran, M.D., in May 2018 for an eye examination after recent MS flare-ups.  Doc. 7-1 at 504.  Dr. Tran noted bilateral nuclear sclerosis and blurry vision.[6]

---

[3] Ataxia describes a lack of muscle control or coordination of voluntary movements such as walking or picking up objects.  It is a sign of an underlying condition and can create difficulties with speech, eye movement, and swallowing.  https://www.mayoclinic.org/diseases-conditions/ataxia/symptoms-causes/syc-20355652 (last visited Feb. 4, 2021).

[4] Pseudobulbar affect is characterized by episodes of sudden uncontrollable and inappropriate laughing or crying and typically occurs in people with certain neurological conditions or injuries that affect the way the brain controls emotion.  https://www.mayoclinic.org/diseases-conditions/pseudobulbar-affect/symptoms-causes/syc-20353737 (last visited Feb. 4, 2021).

[5] Nystagmus is an involuntary, rhythmic side-to-side, up and down or circular motion of the eyes that occurs with a variety of conditions.  https://www.hopkinsmedicine.org/health/conditions-and-diseases/nystagmus (last visited Feb. 4, 2021).

[6] Nuclear sclerosis refers to cloudiness, hardening, and yellowing of the central region of the lens in the eye.  https://www.healthline.com/health/nuclear-sclerosis (last visited Feb. 4, 2021).

Doc. 7-1 at 504. In June 2018, Plaintiff reported to Dr. Barry that she had pain under her ribs, memory difficulty, balance problems, which resulted in falls, and bladder issues. Doc. 7-1 at 817. Plaintiff also informed Dr. Barry that she had to take a nap daily, which she had not had to do previously. Doc. 7-1 at 817. In October 2018, Dr. Barry reported that Plaintiff's MS caused fatigue and significant, persistent disorganization of motor function in her left lower and right upper extremities, as well as uncontrolled emotional outbursts. Doc. 7-1 at 825-27. Dr. Barry also stated that Plaintiff would need to rest three hours during an eight-hour workday and was unable to carry out simple one or two-step instructions on a sustained basis. Doc. 7-1 at 827-28.

### B. The ALJ's Findings

In February 2019, the ALJ issued his findings, determining that Plaintiff had the severe impairments of MS and cervical protrusions, but did not have an impairment or combination of impairments that met or medically equaled an Appendix 1 Listing. Doc. 7-1 at 18, 22. The ALJ found that Plaintiff retained the residual functional capacity ("RFC") to perform a limited range of light work and could perform her past relevant work as a vocational rehabilitation counselor. Doc. 7-1 at 22-24. The ALJ thus found that Plaintiff was not disabled within the meaning of the Act. Doc. 7-1 at 24.

### C. Appeals Council

In August 2019, Dr. Barry wrote a letter to the Commissioner stating that, despite treatment, Plaintiff had experienced a "steady progression of her neurologic disability" and "in no way" would he consider her disability "mild" at that point. Doc. 7-1 at 12. Dr. Barry reported that Plaintiff had "a very difficult time walking," impaired vision in both eyes, diminished cognition and energy, and that she frequently fell due to impaired balance and coordination. Doc. 7-1 at 12. Dr. Barry noted that Plaintiff's MRIs indicated extensive disease

4

and the objective evidence "is very consistent" with her report that she was unable to continue working. Doc. 7-1 at 12. The Appeals Council found that Dr. Barry's letter did "not relate to the period at issue" and did not affect the outcome of Plaintiff's case. Doc. 7-1 at 6.

## II. APPLICABLE LAW

An individual is disabled under the Act if, *inter alia*, she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment" which has lasted or can be expected to last for at least 12 months. 42 U.S.C. § 423(d)(1)(A). The Commissioner uses the following sequential five-step inquiry to determine whether a claimant is disabled: (1) an individual who is working and engaging in substantial gainful activity is not disabled; (2) an individual who does not have a "severe impairment" is not disabled; (3) an individual who "meets or equals a listed impairment in Appendix 1" of the regulations will be considered disabled without consideration of vocational factors; (4) if an individual is capable of performing her past work, a finding of "not disabled" must be made; (5) if an individual's impairment precludes her from performing his past work, other factors including age, education, past work experience, and RFC must be considered to determine if any other work can be performed. *Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991) (per curiam) (summarizing 20 C.F.R. §§ 404.1520(b)-(f), 416.920(b-(f)).

Under the first four steps of the analysis, the burden of proof lies with the claimant. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995). The analysis terminates if the Commissioner determines at any point during the first four steps that the claimant is disabled or is not disabled. *Id*. If the claimant satisfies her burden under the first four steps, the burden shifts to the Commissioner at step five to show that there is other gainful employment available

in the national economy that the claimant can perform.  *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994).  This burden may be satisfied either by reference to the Grid Rules, vocational expert testimony, or other similar evidence.  *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987).

Judicial review of the Commissioner's denial of benefits is limited to whether the Commissioner's position is supported by substantial evidence and whether the Commissioner applied proper legal standards in evaluating the evidence.  *Greenspan*, 38 F.3d at 236; 42 U.S.C. §§ 405(g), 1383(C)(3).  Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant and sufficient evidence as a reasonable mind might accept as adequate to support a conclusion.  *Leggett*, 67 F.3d at 564.  Under this standard, the reviewing court does not reweigh the evidence, retry the issues, or substitute its own judgment, but rather, scrutinizes the record to determine whether substantial evidence is present.  *Greenspan*, 38 F.3d at 236.

In considering the parties' summary judgment arguments, the Court has relied upon their assessment of and citation to the evidence of record.  The Court is not under any obligation to probe the record to find supporting evidence for one side or the other.  *See* FED. R. CIV. P. 56 (the movant and opponent of a motion for summary judgment must support their positions by "citing to particular parts of materials in the record"); *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 164 (5th Cir. 2006).

## III.   ANALYSIS

Plaintiff raises several arguments, but this case may be readily disposed of without addressing them all.  In short, Plaintiff asserts that the ALJ erred by according Dr. Barry's opinion only partial weight without analyzing the factors set forth in 20 C.F.R. § 404.1527(c),

6

despite the fact that he was Plaintiff's treating physician and a specialist. Doc. 10 at 24-27. Plaintiff contends that the ALJ's error was not harmless because if he had conducted the proper analysis, he might have reached a different conclusion. Doc. 10 at 30.

Defendant responds that the ALJ adequately addressed the section 404.1527(c) factors and found Dr. Barry's opinion unsupported by the objective clinical findings and inconsistent with the evidence as a whole. Doc. 12 at 6-7. Furthermore, Defendant argues that Plaintiff was not harmed by any error because Dr. Barry's treatment notes and the other medical evidence of record support the ALJ's RFC finding. Doc. 12 at 8.

"[O]pinions from treating physicians are generally entitled to significant weight." *Kneeland v. Berryhill*, 850 F.3d 749, 760 (5th Cir. 2017). Indeed, "absent reliable medical evidence from a treating or examining physician controverting the claimant's treating specialist, an ALJ may reject the opinion of the treating physician *only* if the ALJ performs a detailed analysis of the treating physician's views" in accordance with the six factors set forth in (now) 20 C.F.R. § 404.1527(c)(2). *Newton v. Apfel*, 209 F.3d 448, 453 (5th Cir. 2000) (emphasis in original); *see* 20 C.F.R. § 404.1527(c) ((1) whether the source examined the claimant or not; (2) whether the source treated the claimant; (3) the medical signs and laboratory findings that support the given opinion; (4) the consistency of the opinion with the record as a whole; (5) whether the opinion is made by a specialist or non-specialist; and (6) any other factor which may support or contradict the opinion). When good cause is shown, an ALJ may accord less weight to a physician's testimony, but rejecting a treating physician's medical opinion still requires an explanation. *See Kneeland*, 850 F.3d at 760-61 ("Although the Commissioner is correct that 'when good cause is shown, less weight, little weight, or even no weight may be given to the physician's testimony,' the cases the Commissioner cites do not rebut the general rule that

7

rejecting a conflicting medical opinion nevertheless requires an explanation.") (citations omitted).

Here, the ALJ did not cite to a competing opinion from a treating or examining physician in giving Dr. Barry's opinion regarding Plaintiff's limitations only partial weight, nor did the ALJ analyze the section 404.1527(c) factors. Defendant nevertheless argues that it is apparent from the decision that the ALJ did consider each of the factors. *See* Doc. 12 at 6-7. The Court acknowledges that the ALJ sporadically mentions some facts suggesting that he may have done so, *see* Doc. 7-1 at 20, 22, 24, but it is far from clear that he considered them in the context of the "detailed analysis" required by section 404.1527(c). When an ALJ rejects a treating physician's opinion for good cause, he must clearly articulate why, and the necessary analysis is missing in this case. *See Kneeland*, 850 F.3d at 760-61. The ALJ's conclusory statement that he considered the medical opinion evidence in accordance with section 404.1527(c) also does not suffice. *Id.* at 761 ("[I]t should go without saying that cursory, boilerplate language about carefully considering the entire record does not constitute an explanation for rejecting a medical opinion.").

Having found error, the Court must still consider whether the error was harmless. *Id.* at 761-62. Errors are considered prejudicial only if they "cast into doubt the existence of substantial evidence in support of the ALJ's decision." *Morris v. Bowen*, 864 F.2d 333, 335 (5th Cir. 1988). Put another way, harmless error exists when it is inconceivable that the ALJ would have reached a different conclusion even absent the error. *Frank v. Barnhart*, 326 F.3d 618, 622 (5th Cir. 2003).

As noted above, Dr. Barry reported that Plaintiff's MS caused fatigue and significant, persistent disorganization of motor function in her lower left and upper right extremities, and she also was subject to uncontrollable emotional outbursts. Doc. 7-1 at 825-27. Additionally, Dr.

Barry opined that Plaintiff would need to rest for three hours in an eight-hour workday and was unable to carry out simple one or two-step instructions on a sustained basis. Doc. 7-1 at 827-28. While the Appeals Council declined to consider Dr. Barry's August 2019 letter, it was written only six months after the ALJ issued his opinion and demonstrates the sustained decline that is a frequent characteristic of MS. In sum, if the ALJ had properly analyzed Dr. Barry's opinion pursuant to section 404.1527(c), it is not inconceivable that he would have reached a different conclusion. *Frank*, 326 F.3d at 622.

## IV. CONCLUSION

For the foregoing reasons, Plaintiff's *Motion for Summary Judgment* should be **GRANTED**, Defendant's *Motion for Summary Judgment* should be **DENIED**, the Commissioner's decision should be **REVERSED**, and this case should be **REMANDED**.

**SO RECOMMENDED** on February 8, 2021.

_____
RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE

**INSTRUCTIONS FOR SERVICE AND
NOTICE OF RIGHT TO APPEAL/OBJECT**

A copy of this report and recommendation will be served on all parties in the manner provided by law.  Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy.  *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b).  An objection must identify the finding or recommendation to which objection is made, the basis for the objection, and the place in the magistrate judge's report and recommendation the disputed determination is found.  An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.  Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error.  *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996), *modified by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections to 14 days).